**THE SOCONY NO. 115.**

**THE SYOSSETT.**

**STANDARD TRANSP. CO. v. LONG ISLAND R. CO.**

No. 197.

Circuit Court of Appeals, Second Circuit.

Feb. 14, 1933.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney and Paul Speer, both of New York City, of counsel), for appellant Standard Transp. Co.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and P. Fearson Shortridge, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

Much has been said in argument and in the briefs as to whether or not the Hartford Socony was an overtaking vessel, and the decision below was based in part upon her having that status. We think, however, that it is unnecessary to deal with that phase of the matter at all. Before the libelant can recover

in this action, it must appear that the Syossett was at fault. She became disabled without fault. It is said that she failed to continue to be without fault when she gave no warning of her helpless condition by putting out lights. It is claimed specifically that this fault lay in her failure to show two red lights, in accordance with the provisions of article 4 (a) of the International Rules (33 USCA § 74) covering the situation of "a vessel which from any accident is not under command." The International Rules are said to be made applicable by 33 USCA § 61 to the effect that they cover "all public and private vessels of the United States upon the high seas and in all waters connected therewith, navigable by sea-going vessels" except in so far as special rules are adopted. It is conceded that the Inland Rules (33 USCA §§ 171–231) do not contain article 4 of the International Rules (33 USCA § 74) or its counterpart, and do not require the display of two red lights or any additional designated lights by a vessel in the situation of the Syossett.

For all present purposes, we will assume arguendo that the libelant is correct about the application of the International Rules in waters described in 33 USCA § 61, whenever no special rule governs the situation. Even so, the Syossett was forbidden by the Inland Rules to put out two red lights, since article 1 of those rules (33 USCA § 171) provides that "no other lights which may be mistaken for the prescribed lights shall be exhibited" during the time lights are required to be displayed. Under the authority granted by 33 USCA § 157, the supervising inspectors of steam vessels adopted rules on July 22, 1914, which the Secretary of Commerce approved July 26, 1914, of which Nos. 1, 2, 3, and 4 require the display of two red lights in situations other than that of the Syossett. Rules 2 and 3 require these red lights to be carried in a vertical plane. And so what is charged as a fault of the Syossett would have been a violation of article 1 of the Inland Rules.

■ But the libelant says that No. 2 of the rules just noticed should be held to apply to the Syossett, since the buoy that fouled her propeller was attached to a block of concrete which was dragging as the Syossett drifted.

This rule reads as follows:

"Rule 2. Rule for steamers, derrick boats, lighters, or other types of vessels made fast alongside a wreck or moored over a wreck which is on the bottom or partly submerged, or which may be drifting.

"Steamers, derrick boats, lighters, or other types of vessels made fast alongside a wreck, or moored over a wreck which is on the bottom or partly submerged, or which may be drifting, shall display by day two shapes of the same character and dimensions and displayed in the same manner as required by the foregoing rule, except that both the shapes shall be painted a solid bright red, but where more than one vessel is working under the above conditions, the shapes need be displayed only from one vessel on each side of the wreck from which it can best be seen from all directions.

"By night this situation shall be indicated by the display of a white light from the bow and stern of each outside vessel or lighter not less than 6 feet above the deck, and in addition thereto there shall be displayed in a position where they may best be seen from all directions two red lights carried in a vertical line not less than 3 feet nor more than 6 feet apart, and not less than 15 feet above the deck."

To make the rule fit the case, it is necessary to read the words "or which may be drifting" to apply generally to "steamers, derrick boats, lighters" without regard to what follows them immediately, viz. "or other types of vessels made fast alongside a wreck, or moored over a wreck which is on the bottom or partly submerged." Even if the first paragraph of this rule could be so read, and we do not mean to intimate that it could, since it would seem that a wreck which may be drifting was referred to, the language of the second paragraph which directly applies to the night when lights are to be displayed prevents such an interpretation. It refers to "this situation" which can only mean the situation by night covered by the first paragraph by day, and provides for two red lights in addition to a white light on the bow and stern of each outside vessel or lighter. If the rule was intended to cover the vessels named when merely drifting regardless of a wreck, there would, of course, have been no such mention of "each outside vessel or lighter."

■ We are therefore of the opinion that the Syossett did not violate any rule as to lights and did nothing which can be charged to her as a fault. The fact remains that the Hartford Socony damaged her own tow in attempting to go ahead of the Syossett, and, as the Syossett has not been shown to have done or have failed to do anything required of her which had any effect in causing the collision, the libel against her was properly dismissed. That alone requires an affirmance of the decree.

Decree affirmed.